WILLIAMS v. WALKER, FLEMING & CO.

1. A finding of fact by referee and Circuit judge approved.
2. A note and mortgage given by a wife for the amount of a debt due by her husband, in consideration of her release from arrest and imprisonment under a charge of selling goods covered by a lien without notice, and of a discontinuance of such criminal prosecution, are illegal, and in action brought by her, the note and mortgage were ordered to be canceled and surrendered.

Before FRASER, J., Spartanburg, July, 1881.

Action by A. J. Williams and Diana, his wife, against Walker, Fleming & Co. The Circuit decree was as follows:

This case came before me on the report of the special referee, C. P. Wofford, Esq., and exceptions thereto by the defendants. The action was brought to set aside a note and mortgage given by Diana Williams, one of the plaintiffs, to the defendants, on the grounds: First, that she was forced to execute the same by threats and intimidations; and, second, that there was no consideration for the same.

The real estate covered by the mortgage was the property of Diana Williams, derived by her from the estate of her first husband, her two children being entitled each to one-third of the tract of land, and her one-third only being mortgaged. It appears from the testimony that Diana Williams intermarried with A. J. Williams, her present husband, over sixteen years ago, and, of course, before the adoption of our present State constitution. The mortgage in this case is signed by her alone, and her husband did not join, neither is there any renunciation of inheritance by her. Perhaps, for some good reason which these proceedings do not reveal, no question has been made as to the right of Diana Williams to make any valid conveyance of her land in the mode adopted in the execution of this mortgage.

It is unnecessary to consider whether the failure of the plaintiffs to except to the report of the referee on the ground that the

2M

referee found that there was no duress, can prevent this court from coming to a different conclusion, if, on examining the testimony, it appears that for any reason the referee did not err in the language of second exception, "in finding that the said note and mortgage are void," or of the fourth, "in refusing to dismiss the complaint."

The husband and wife had both been arrested on a charge of selling property under a lien without giving notice to the purchaser. The husband was in jail and the wife was informed that she must find bail in the sum of five thousand dollars ($5,000), or go to jail. The only other alternative left to her was to sign the note and mortgage of this land for an amount sufficient to pay her husband's debts to the defendant, except a small deduction of $40. For these debts she was in no way liable, and a large part of the indebtedness was an old debt not even covered by the lien held by defendants on the husband. It may be that both plaintiffs might have been convicted if the prosecution had been pressed against them.

I am satisfied, however, that whatever benefit or advantage the defendants expected to derive from the transaction, or whatever other incidental advantages in the way of a deduction of $40, and an extension of time, may have accrued to A. J. Williams, the husband, no such benefit accrued directly to Diana Williams. She had no pecuniary interest in the arrangement or settlement of the debts of A. J. Williams. The only consideration moving to her was the release from arrest and the discontinuance of the prosecution. The clearer her guilt, the stronger the motive. "Courts of equity watch with extreme jealousy all contracts made by a party while under imprisonment, and if there is the slightest ground to suspect oppression or imposition in such cases, they will set the contracts aside." 1 *Story Eq.,* § 239.

The general rule is that agreements for compromise of public prosecutions are illegal and void. This doctrine was conceded in *Corley* v. *Williams,* 1 *Bail.* 588, and the only exception contended for was that it did not apply to assaults and batteries, and other misdemeanors of a private nature. The reason for this exception is given by Judge O'Neall, in *Mathison &*

*Kingsby* v. *Hanks*, 2 *Hill* 625, in these words: " This double remedy (in assaults and batteries) is unnecessary, for the universal practice in England, and in this State, is, when the prosecutor is the party injured, and the defendant makes adequate reparation to him, to impose only a nominal fine."

The analogy between the offense charged against these plaintiffs and cases of assault and battery fail in at least two very important particulars: First. The least punishment that a judge can inflict on a person convicted under the act of 1873 (15 *Stat.* 332) is imprisonment for not less than ten (10) days and a fine not less than ten (10) dollars. I do not regard this as nominal. Second. In assault and batteries the very act which is the gist of the prosecution in the criminal action is the gist of the action in the Common Pleas, or the civil side of the court.

The injury done to the person who holds a lien over property, which is sold without notice, is the non-payment of his debt, and unless this is the result there is no injury done to him. The public offense in law is the same where the property sold is the last or only resource for the payment of his debt, or whether there is ample left to meet all demands on the property. The act is in itself no private wrong, and, unless an injury should follow, there is nothing to redress but the public wrong, which can be redressed only by a criminal action.

The practice of using the criminal process of the courts to redress private wrongs is not to be encouraged; and I am especially unwilling to lend the aid of the court to private parties who use the criminal process of the court to enforce against parties in no way liable for them, their claims against another person, and which, as in this case, have no connection whatever with the act which is the subject of the criminal action.

It is, therefore, ordered and adjudged: First. That the exceptions be overruled, and that the report of the referee be confirmed. Second. That the defendants and each of them be forever enjoined from collecting or attempting to collect and enforce the payment of the note or forclosure of the mortgage described in the pleadings in this case. Third. That the defendants do deliver the said note and mortgage to the clerk of

this court, to be by him canceled and delivered to the plaintiff Diana Williams. Fourth. That the defendants pay the costs of of this action.

Defendants appealed.

*Messrs. Bobo and Carlisle,* for appellants.

*Mr. J. S. R. Thomson,* contra.

March 3d, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiff Diana owns an undivided one-third interest in a certain tract of land in Spartanburg county, derived from the estate of her former husband, prior to her marriage with her present husband, and her two children by her former marriage own the remaining two-thirds. The family live upon this tract of land and work it together. In the year 1879, A. J. Williams gave a lien on the crop to defendants for fertilizers, and in the fall of that year C. E. Fleming, one of the members of the firm of Walker, Fleming & Co., sued out a warrant against A. J. Williams and Diana Williams for selling property covered by the lien without giving notice to the purchaser of the existence of such lien, in violation of the provisions of the act of February 12th, 1873, (15 *Stat.* 332.)

Under this warrant the plaintiffs were arrested and required to give bail in the sum of five thousand dollars, the maximum of the pecuniary penalty prescribed in said act, and A. J. Williams, in default of bail, was committed to jail. While Diana Williams was under arrest, but before she was actually committed to jail, negotiations were opened for a settlement of the whole matter, which resulted in an arrangement whereby Diana gave her note to the defendants, dated November 20th, 1879, payable twelve months after date, with interest from date, for $323.05, in satisfaction of the amount due under the lien, and also of an old note due to Walker & Fleming, by A. J. Williams, upon which a deduction of $40 was made, and also paid the costs of the criminal proceeding. Thereupon the plaintiffs were discharged from arrest and imprisonment and the criminal proceedings were discontinued.

Soon afterwards this action was commenced for the purpose of having said note and mortgage declared void, and the same delivered up to be canceled. By consent the case was referred to a referee, "to take testimony, pass upon all issues of law and fact arising herein, and report the same to court with his recommendations thereon." The referee took the testimony, which is set out in the "Case," and made a report in which, while he failed "to find such circumstances of duress as will, of themselves, avoid the note and mortgage, if the arrest was legal and regular," he did find as matter of fact "that the whole consideration of the note and mortgage in this case, was the release of the plaintiff from arrest and the stopping of the prosecution." And as matter of law he found "that the said note and mortgage are void * * * and should be delivered up to be canceled, and that the defendants should be forever restrained from proceeding to enforce them."

To this report the defendants excepted, alleging error in the findings both of fact and law. The Circuit judge overruled the exceptions and confirmed the report, and from his judgment defendants appeal upon various grounds, which may be stated substantially as follows: 1st. Because the Circuit judge erred in overruling the exceptions to the referee's report. 2d. Because of error in holding that a consideration to support a contract must import some advantage to the promisor. 3d. In holding that the testimony showed no legal consideration for the contract of the plaintiff Diana Williams, evidenced by the note and mortgage, except the discontinuance of the criminal prosecution against her. 4th. In holding that said contract was thereby rendered void. .

The question as to what was the real consideration of the note and mortgage, was one of fact, and that question has been answered adversely to the appellants, both by the referee and the Circuit judge, and so far from there being any lack of evidence to support their findings, we think it must be clear to every unprejudiced mind, from the testimony in this case, that the sole moving cause which induced the plaintiff Diana to sign the note and mortgage was to secure release from arrest and imprisonment, and a discontinuance of the criminal proceeding. She

was in no way responsible for the debts of her husband, and although she may, as the referee says, have participated in the benefit accruing from the money advanced under the lien, and perhaps in the money or supplies which were the consideration for the old note, yet this is nothing more than what might be said in most, if not all, cases in which a husband living with his wife obtains money or supplies upon his own credit, or upon the faith of a lien on his crop. She was not bound, either legally or morally, to pay such a debt, and the creditor who chooses to extend credit to the husband alone, must look alone to him for payment. There was no evidence whatever tending to show that A. J. Williams had leased the land upon which the crop was made, from his wife and her children by a former marriage, and thereby acquired a right to give a lien on it, but, on the contrary, the referee says that "they all worked the place together, and the plaintiff A. J. Williams shared in the proceeds of the crop." It may well be questioned, therefore, whether he had any right to give a lien upon the crop.

Assuming, then, as matter of fact, as we are bound to do, not only from the concurrent findings of the referee and the Circuit judge, but also from our own view of the testimony, that the true consideration of the note and mortgage was the release of the plaintiff from arrest and imprisonment, and a discontinuance of the criminal proceeding, the next inquiry is, whether such a consideration was sufficient to support the contract evidenced by the note and mortgage. The general rule is that such a consideration is illegal, and the only exception seems to be in cases of assault and battery, and other misdemeanors of like nature, where it has been held that a note given to the party injured by the person who has inflicted the injury may be sustained upon the ground that the real consideration is the compensation due to the one by the other for the personal injury which he has sustained, the amount of which has been ascertained by an agreement of the parties, instead of by the verdict of a jury; and inasmuch as it is the settled practice in this State to impose only a nominal punishment under a conviction for assault and battery where the party injured has also sought redress by a civil action

for damages, a note given in compromise of a prosecution for assault and battery has been sustained.

But where a note is given by a person not liable for the damages sustained by the party injured, for the purpose of stopping a prosecution even for assault and battery, it will be held void as based upon an illegal consideration, because, in such a case, the consideration cannot be referred to the compensation due by the one to the other, for there is nothing due in such a case from the maker to the payee of the note, and the consideration must be referred to the stopping of the prosecution, and is, therefore, illegal. These views are fully supported by the following cases: *Corley* v. *Williams,* 1 *Bail.* 588; *Mathison* v. *Hanks,* 2 *Hill* 625; *Banks* v. *Searles,* 2 *McM.* 356; *Gray* v. *Seigler,* 2 *Strob.* 117.

Now, even conceding, what may well be questioned under the circumstances of this case, that Diana Williams might have been made liable, in a civil action for damages, for disposing of property covered by the lien, yet, as we have seen, she was never liable for the debts which the note and mortgage were given to secure, and there is no pretense that the note was given as a compensation for such damages. If she had been arrested for burning a house of the defendants, and the prosecution had been stopped upon her executing a note and mortgage to secure the payment of debts due by her husband, for which she was in no way liable, it might as well be said that, as she would be liable for the damages done to the defendants by the destruction of their house, such liability would constitute a sufficient consideration to support the note, as it can be said, in this case, that her liability for damages in disposing of property covered by the lien in favor of the defendants, constitutes a valid consideration for the note and mortgage here in question.

A court of equity will not readily sanction or recognize a contract which one has been induced to enter into for the purpose of securing immunity from a criminal prosecution. Such a use of criminal process violates every consideration of public policy, and whoever resorts to it should meet with condemnation rather than encouragement. It is quite manifest, from all of the circumstances of this case, and, indeed, is openly avowed by the

defendant, who was the active agent in the whole proceeding, that the real purpose of the criminal proceeding was, not to promote the ends of public justice, but to secure the payment of a debt. Such a mode of collecting debts is certainly not entitled to the favorable consideration of a court of justice.

The second ground of appeal is taken under a misconception of the decree of the Circuit judge. We do not understand him to lay down the proposition, that a consideration to support a contract must necessarily import some advantage to the promisor, or to deny that forbearance or a release of part of a debt may constitute a sufficient consideration to support a promise to pay the debt of another. Under the view which he took of the testimony, such a question could not arise, and, therefore, it was not necessary for him to express any opinion upon it, nor did he undertake to do so.

We concur, therefore, in the view taken of the case by the Circuit judge, and are unable to see any ground upon which this appeal can be sustained. The judgment of this court is that the judgment of the Circuit Court be affirmed.